UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALEXANDER ALBINO,

                              Plaintiff,

      -vs-                                    **DECISION and ORDER**
                                              **No. 6:14-cv-06519(MAT)**
GLOBAL EQUIPMENT USA, LTD.,

                              Defendant.
_____

GLOBAL EQUIPMENT USA, LTD.,

    Defendant/Third-Party Plaintiff,

    -vs-

H. P. NEUN COMPANY, INC., ISOWA
AMERICA, INC. and ISOWA CORPORATION,

               Third-Party Defendants.
_____

## I. Introduction

     This is a diversity action brought by Alexander Albino
("Plaintiff") against Global Equipment USA, LTD. ("Global"),
alleging causes of action based on strict products liability and
negligent failure to warn. Before the Court are Global's cross-
motion to amend/correct the third-party complaint (ECF #83),[1]
motions to dismiss for lack of jurisdiction and failure to state a

_____

[1]
     Numerals in parentheses preceded by "ECF #" refer to document entries in
the Court's electronic case filing system.

-1-

claim by ISOWA Corporation ("IC") and ISOWA America, Inc. ("IAI") (ECF ##121 & 122). For the reasons discussed herein, the Court grants IAI's (ECF #121) and IC's (ECF #122) motions to dismiss for lack of jurisdiction; denies as moot IAI's (ECF #121) and IC's (ECF #122) motions to dismiss for failure to state a claim; and denies as futile Global's cross-motion (ECF #83) to amend/correct the third-party complaint.

## II. Factual Background and Procedural History

On September 8, 2012, while he was operating a Flexo Die Cutter Slotter, Model DCFS-7 ("the Machine") at H.P. Neun, a New York domiciliary, Plaintiff's hand was drawn into the Machine and injured by rotating rollers. According to Plaintiff, the guarding on the Machine was defective and failed to prevent his fingers from reaching the rotating rollers. Plaintiff alleges that Global failed to warn Plaintiff and H.P. Neun about this flaw. (Complaint (ECF #1), ¶¶ 15-23, 27-28, 33).

IC, a foreign corporation constituted under the laws of Japan, with its principal offices in Japan, manufactured the Machine in 1979. Colorado Container Corporation ("CCC"), a non-party, ordered the Machine from IC on November 19, 1979, and it was shipped to CCC in May of 1980.

At some point between May of 1980 and June of 2007, the Machine was acquired by former third-party defendant Arvco

Container Corporation ("Arvco").[2] Arvco contracted with Global, an Illinois corporation with its principal place of business in Illinois, to list the Machine and broker any ensuing sale.

In or around May of 2008, Global approached H.P. Neun with an offer to purchase the Machine. H.P. Neun accepted the offer, and in July of 2008, the two companies entered into a contract for the sale and shipment of the Machine. In August of 2008, H.P. Neun remitted payment to Global for the Machine. Global purchased the Machine from Arvco, which shipped the Machine to Global. In late September of 2008, H.P. Neun took possession of the Machine and had it shipped to New York.

From about 2010, through 2016, IAI made a number of sales and shipments of parts for the Machine to H.P. Neun, and serviced the Machine on one occasion after Plaintiff's accident. IAI is a wholly-owned subsidiary of IC and an Arizona domiciliary formed in 2002. IAI is responsible for new machine and parts sales for IC, as well as for providing service and support for IC in North and South America. IAI has never owned or leased property in New York; maintained any offices in New York; maintained any bank accounts in New York; stationed any employees in New York; been qualified, licensed or authorized to do business in New York; appointed an agent for service of process in New York; authorized anyone to

---

[2] Arvco was terminated as a party in this action on March 2, 2016.

accept service on its behalf in New York; or paid taxes in New York. IAI did not have any role in the original sale and distribution of the Machine. Neither IC nor IAI were involved in the 2008 sale of the Machine to H.P. Neun. The parties agree that none of the parts sold by IAI were defective or were involved in Plaintiff's accident.

Plaintiff filed his complaint on August 28, 2014. Global filed its third-party complaint (ECF #32) on January 18, 2016, seeking contribution and indemnification from IAI and IC. Global's original allegations of jurisdiction and liability were premised on IC's and IAI's (or a predecessor's) conduct concerning the initial design, manufacturing, and distribution of the Machine.

IC and IAI moved to dismiss Global's third-party complaint (ECF ##79, 80) on the grounds that neither was subject to general jurisdiction in New York, and that neither could be subject to specific jurisdiction in New York based upon the initial design, manufacture, or distribution of the Machine. IAI also argued that it is not a successor to any company involved in the distribution of the Machine, and therefore Global's third-party complaint warranted dismissal for failure to state claim under Federal Rule of Civil Procedure ("FRCP") Rule 12(b)(6). In opposition to the motions to dismiss, Global moved for leave to amend the third-party complaint (ECF #83) to allege a new theory of liability and jurisdiction—that IAI had an "special relationship" with H.P. Neun,

based on its "knowledge of the location of the Machine at H.P. Neun's facilities in New York, it being held out as an expert in the sale of parts and services for the Machine, its ongoing sale of parts for use in the Machine at the H.P. Neun facilities in New York," "which created for itself a duty to warn of any defects in the manufacture, or design of the [M]achine, and/or a duty to warn against the dangers of the use of the Machine." (Proposed Amended Third-Party Complaint (ECF #83-2), ¶ 55). With regard to IC, Global alleges in its proposed amended complaint that IAI, "[i]n selling the parts provided to it by [IC] to H.P. Neun, [IAI] was acting as an agent of [IC]." (Id., ¶ 69). Global further alleges that IC, through its agent, IAI, had a "special relationship" with H.P. Neun, "which created a duty to warn of any defects in the manufacture, or design of the [M]achine, and/or a duty to warn against the dangers of the use of the Machine." (Id., ¶ 70).

On January 26, 2017, the Court issued a decision and order (ECF #93) denying without prejudice IAI's and IC's motions to dismiss for failure to state a claim and for lack of personal jurisdiction. The Court also granted Global's request to conduct jurisdictional discovery and indicated that IAI and IC could renew their motions to dismiss following the completion of that discovery. The Court further declined to rule on Global's cross-motion to amend its third-party complaint, filed in opposition to IAI's and IC's first round of motions to dismiss. The Court

indicated that it would refrain from ruling on Global's cross-motion to amend the third-party complaint pending the Court's resolution of IAI's and IC's challenges to the exercise of personal jurisdiction.

The parties subsequently engaged in jurisdictional discovery, which included depositions of corporate representatives from IAI and IC. The parties have stipulated (ECF #120) that jurisdictional discovery is now complete. IC and IAI have renewed their motions to dismiss for lack of jurisdiction and for failure to state a claim.

## IV. The Motions to Dismiss for Lack of Jurisdiction

### A.    Standard of Review

To defeat a motion to dismiss pursuant to FRCP 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566–67 (2d Cir. 1996) (citation omitted). Prior to discovery, the plaintiff's prima facie showing may be met solely by allegations pled in good faith. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854 (1990); accord, e.g., Metro. Life Ins. Co., 84 F.3d at 567. Where, as here, the parties have conducted "extensive discovery" regarding the defendants' contacts with the forum state, "but no evidentiary hearing has been held—'the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited

by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.'" <u>Metro. Life Ins. Co.</u>, 84 F.3d at 567 (quoting <u>Ball</u>, 902 F.2d at 197).

## B.    Personal Jurisdiction: General Principles

"[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." <u>Arrowsmith v. United Press Int'l</u>, 320 F.2d 219, 223 (2d Cir. 1963) (<u>en banc</u>) (footnote omitted). Thus, a district court first must determine whether jurisdiction may be obtained over the non-resident defendant pursuant to the forum state's laws. <u>Savin v. Ranier</u>, 898 F.2d 304, 306 (2d Cir. 1990). The district court then must ask whether the exercise of jurisdiction under the forum state's laws comports with the requirements of due process. <u>Id.</u>

## C.    Specific Jurisdiction Under New York Law

Global asserts that specific jurisdiction over IAI and IC is proper under New York's long-arm statute, specifically, sections 302(a)(1) and 302(a)(3)(i) of New York's Civil Practice Law and Rules ("CPLR"). These sections provide in relevant part as follows:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> . . .
>
> 3. commits a tortious act without the state causing injury to person or property within the state, . . . if he
>
> > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state. . . .

N.Y. CIV. PRAC. L. & R. 302(a) (McKinney's).

With regard to CPLR 302(a)(1), Global asserts that IC is subject to jurisdiction under an agency theory because it transacted business within New York or contracted anywhere to supply goods or services in New York through its putative agent, IAI. Specifically, Global points to IAI's sales of parts to H.P. Neun through 2016, and IAI's performance of a three-day service call on the Machine in 2015. With regard to CPLR 302(a)(3)(i), Global argues that jurisdiction is proper because IC committed a tortious act without the state causing injury to person or property within the state—i.e., IC manufactured the Machine outside of New York, and the Machine caused injury to Plaintiff within New York—and, through its agent, IAI, IC regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state.

## 1.   CPLR 302(a)(1)

When evaluating whether personal jurisdiction may be exercised under CPLR 302(a)(1), "'a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction.'" Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012) (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (citation omitted; alteration in original)). For purposes of this section, "New York courts define 'transact[ing] business' as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Best Van Lines, Inc., 490 F.3d at 246-47 (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382 (1967) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958) (internal quotation marks omitted)). To make this determination, "[c]ourts look to 'the totality of the defendant's activities within the forum[.]'" Best Van Lines, Inc., 490 F.3d at 247 (quoting Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors, 510 F.2d 870, 873 (2d Cir. 1975) (citation and internal quotation marks omitted in original)). "The showing necessary for a finding that defendant 'transacted business' and is suable on a cause of action arising from that transaction is considerably less than that needed to establish

defendant's 'doing business,' which renders the defendant subject to suit on even an unrelated cause of action." <u>Hoffritz for Cutlery, Inc. v. Amajac, Ltd.</u>, 763 F.2d 55, 58 (2d Cir. 1985) (citations omitted).

With regard to the second prong of the jurisdictional inquiry under CPLR 302(a)(1), New York courts have interpreted the phrase "arises from" as meaning that, "in light of all the circumstances, there must be an 'articulable nexus' or 'substantial relationship' between the business transaction and the claim asserted." <u>Licci v. Lebanese Canadian Bank</u>, 20 N.Y.3d 327, 339 (2012) ("<u>Licci I</u>") (internal quotations omitted). The New York Court of Appeals has "consistently held that causation is not required, and that the inquiry under the statute is relatively permissive[.]" <u>Id.</u> (citing <u>McGowan v. Smith</u>, 52 N.Y.2d 268, 272 (1981); <u>Kreutter v. McFadden Oil Corp.</u>, 71 N.Y.2d 460, 467 (1988)). Nevertheless, there must be, "at a minimum, a relatedness between the transaction [of business] and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim[.]" <u>Id.</u> (footnote omitted).

### a. IAI Is Not Subject to Personal Jurisdiction Under CPLR 302(a)(1)

Because jurisdiction over IAI individually is necessary to sustain jurisdiction over IC pursuant to an agency theory, the Court first will consider whether IAI is subject to New York's long-arm jurisdiction under CPLR 302(a)(1) "so as to supply the

requisite 'link in the chain' to IC." (Global's Memorandum of Law in Opposition ("Global Mem.") (ECF #130-10) at 14).

The New York Court of Appeals has held that "the long-arm authority conferred by [CPLR 302(a)(1)] subdivision does not extend to nondomiciliaries who merely ship goods into the State without ever crossing its borders[.]" McGowan v. Smith, 52 N.Y.2d 268, 271 (1981). Rather, there must be some additional "'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts[.]" Id. (citations omitted).

Global asserts that IAI engaged in "purposeful activities" within New York by virtue of the fact that it engaged in more than fifty (50) separate transactions with H.P. Neun for the sale of parts and equipment relative to the Machine from 2010 to 2016. (See Global Mem. (ECF #130-10) at 6-7, 10-11, 14 & Global's Exhibit ("Global Ex.") Ex. A (ECF #130-1) (Invoices, Purchase Orders, Packing Slips, and Receipts)). The combined revenue from these sales was in excess of $60,000. Global asserts that this is definitive evidence that IAI, as IC's agent, took purposeful and affirmative action to transact business in New York relating to the Machine and that IC had knowledge of IAI's actions in that regard. Additionally, Global notes, IAI made a three-day service call to H.P. Neun regarding the Machine in 2015. (See Global Mem. (ECF #130-10) at 6-7, 10-11, 14 & Global Ex. A (ECF #130-1) (Invoices,

Purchase Orders, Packing Slips, and Receipts)).

IAI acknowledges that it "made *unrelated* sales of parts concerning the [Machine] to H.P. Neun in New York." (IAI's Memorandum of Law in Support ("IAI Mem.") (ECF #121-1) at 10 (emphasis in original); <u>see also</u> Declaration of Ronald Miller ("Miller Decl.") (ECF #80-6), ¶¶ 12, 13; Reply Declaration of Ronald Miller ("Miller Reply") (ECF #89-1), ¶¶ 2, 5). However, IAI maintains, "none of the parts concern the component which is alleged to be defective in this action[.]" (IAI Mem. (ECF #121-1) at 10 (quoting Miller Decl. (ECF #80-6), ¶ 14).[3] Therefore, IAI argues, these limited sales are irrelevant to specific jurisdiction under CPLR 302(a)(1). (<u>Id.</u>). IAI acknowledges the service call but contends it cannot be relevant to the jurisdictional inquiry because it post-dated the accident. IAI maintains that the only transactions that potentially can form the basis of jurisdiction over IAI—and, by extension, IC—are its limited sales of unrelated parts *before* the September 2012 incident in which Plaintiff was injured.

The Court will evaluate the "arises from" prong first, as it is determinative. The New York Court of Appeals has explained that

> the "arise-from" prong limits the broader "transaction-of-business" prong to confer jurisdiction

---

[3] Miller, IAI's president, avers that prior to the accident, approximately 65 percent of the parts sold to H.P. Neun were manufactured by IC, while the remaining approximately 35 percent of the parts were commercially available items manufactured by a variety of suppliers. (Miller Reply (ECF #89-1), ¶ 11).

> *only over those claims in some way arguably connected to*
> *the transaction. . . .*

<u>Licci I</u>, 20 N.Y.3d at 339-40 (emphasis supplied). Whether a plaintiff's claim can be said to "arise[] from a defendant's New York contacts depends upon 'the nature and elements of the particular causes of action pleaded.'" <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 732 F.3d 161, 169 (2d Cir. 2013) ("<u>Licci II</u>") (quoting <u>Licci I</u>, 20 N.Y.3d at 340). Every element of the cause of action pleaded need not be related to the New York contacts; "rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." <u>Licci I</u>, 20 N.Y.3d at 341.

Both parties agree that the relevant claims for this inquiry are the tort claims asserted by Plaintiff in the original complaint.[4] "The claim does not need to sound in contract to 'arise out of' a transaction of business in New York." <u>Stewart v. Adidas A.G.</u>, No. 96 Civ. 6670(DLC), 1997 WL 218432, at *5 (S.D.N.Y. Apr. 30, 1997) (citing Joseph McLaughlin, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C302:2, at 78 (1990) ("Any claim, regardless of theory, which directly and proximately

---

[4]     In the context of CPLR 302(a)(3), courts have held that when a defendant files a third-party action seeking indemnification, the relevant "injury" is the one pleaded by the plaintiff in the primary action.  <u>UTC Fire & Sec. Americas Corp. v. NCS Power, Inc.</u>, 844 F. Supp.2d 366, 373 n. 5 (S.D.N.Y. 2012) (citation omitted).

arises out of a transaction of business in New York may be used as the basis of CPLR 302 jurisdiction.")). However, the Second Circuit has noted, CPLR 302(a)(1) is "typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983); see also Torres v. Monteli Travel, Inc., No. 09-CV-2714 ARR SMG, 2011 WL 2670259, at *8 (E.D.N.Y. July 7, 2011) (citing 2-301 Weinstein, Korn & Miller, NEW YORK CIVIL PRACTICE, ¶ 302.05 ("CPLR 302(a)(1) may occasionally provide the basis for a tort claim but will most often cited as the basis for a contract claim.")).

Plaintiff in this case alleges causes of action sounding in negligent failure to warn and strict products liability for injuries he sustained while utilizing the Machine manufactured by IC. "[T]o make out a prima facie case, in negligence or strict liability, the plaintiff must show that: (1) the manufacturer owed plaintiff a duty to exercise reasonable care, that is, it knew or should have known of latent dangers resulting from intended or reasonably foreseeable unintended uses of the product; (2) the product was used in a reasonably foreseeable manner; and (3) the manufacturer's failure to warn was the proximate cause of the plaintiff's injury." Monell v. Scooter Store, Ltd., 895 F. Supp.2d

398, 413 (N.D.N.Y. 2012) (citations omitted). Global contends that Plaintiff's allegations "'arise from' IC's business transactions in New York[, through its putative agent, IAI,] vis-à-vis the . . . [M]achine since, as the manufacturer, IC may be held liable for the defective design, or manufacturing of one of its machines, or for failure to warn of dangers inherent in the operation of its machines." (Global Mem. (ECF #130-10) at 11) (citing Hoover v. New Holland, N. Am., Inc., 23 N.Y.3d 41 (2014)).

As a general matter, "where a plaintiff is injured as a result of a defectively designed product, the product manufacturer or others in the chain of distribution may be held strictly liable for those injuries." Hoover, 23 N.Y.3d at 53 (citations omitted). Global's argument thus correctly restates a principle of products liability law but does not show how IAI's New York activities are "substantially proximate," Xedit Corp. v. Harvel Indus. Corp., Fidelipac, 456 F. Supp. 725, 729 (S.D.N.Y. 1978), to IAI's "allegedly unlawful acts," id., such that Plaintiff's injury can be said to "arise from" IAI's contacts with the forum state. In other words, it simply does not follow from the fact that the parts sold by IAI to H.P. Neun in New York were for the Machine, and the fact that Plaintiff was injured by the same Machine, that Plaintiff's products liability claims "arise out of" IAI's sales and shipments of parts to New York.

First, the parties do not dispute that the parts sold by IAI

to H.P. Neun prior to Plaintiff's accident are not defective. Second, there is no allegation that any of these parts sold by IAI were involved in or contributed to Plaintiff's accident. Third, Plaintiff's accident logically cannot be said to have "arisen out of" the parts sales that occurred *after* his accident. The same is true with regard to IAI's service call that post-dated the accident by about three years. See Avato v. Walker Mfg. Co., 706 F. Supp. 300, 302 (S.D.N.Y. 1989) ("[CPLR] § 302(a)(1) is inapplicable [in a diversity action brought by plaintiffs against defendants for personal injuries allegedly suffered when one plaintiff was struck by part of a pneumatic jack] here, because it does not appear from any of the materials provided by plaintiffs that Voss transacted any business in New York, or alternatively, contracted to supply any goods or services in New York. First, the president of Voss testified that Voss shipped only two jacks to New York over an 11-year period; neither of those jacks is alleged to have injured Avato. Thus, Avato's injury did not stem from business transacted by Voss in New York.") (citing Tonns v. Spiegel's, 455 N.Y.S.2d 125, 127 (2d Dep't 1982) (CPLR § 302(a)(1) is applicable only where "the claim is a direct consequence of purposeful New York activity and the benefits and protections of New York law have been utilized by the manufacturer."); CT Chem. (USA), Inc. v. Horizons Int'l, Inc., 106 F.R.D. 518, 520 (S.D.N.Y. 1985) ("A defendant over whom jurisdiction is based on [CPLR] § 302(a)(1) may be sued only on

causes of action arising from the specific transaction of business in New York.")).

The record evidence does not permit the finding of a "direct[] and proximate[]," McLaughlin, Practice Commentaries, supra, or "substantially proximate," Xedit Corp., 456 F. Supp. at 729, linkage between the sales and shipments by IAI to H.P. Neun in New York, and Plaintiff's injury. Stated somewhat differently, the Court cannot find that "at least one element [of either cause of action] arises from [IAI's] New York contacts," Licci II, 732 F.3d at 169, and therefore the necessary relationship between IAI's business transactions and the claim asserted is lacking. Because Global has failed to establish the "arise from" prong of CPLR 302(a)(1), the Court finds that jurisdiction under this section cannot be obtained over IAI.

### b. IC Cannot Be Subject to Personal Jurisdiction Under CPLR 302(a)(1)

Global's current theory of jurisdiction as to IC depends on finding that (1) IAI was IC's agent in connection with IAI's parts sales to H.P. Neun, and (2) jurisdiction over IC can be based on IAI's sales and shipments of parts to H.P. Neun in New York. See Stewart, 1997 WL 218431, at *4 ("A foreign corporation may be subject to personal jurisdiction in New York based on its agent's transaction of business. Under this rule, a plaintiff need not establish a formal agency relationship between defendants and [the agent]. . . .") (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d

-17-

460, 467 (1988); other citation omitted; brackets in original).

The Court has found that it cannot exercise personal jurisdiction over IAI pursuant to CPLR 302(a)(1). Therefore, it necessarily is precluded from exercising personal jurisdiction over IC under CPLR 302(a)(1)'s agency provision.

## 2. CPLR 302(a)(3)(i)

For either subsection of CPLR 302(a)(3) to apply, "(1) a defendant must have committed a tortious act outside New York, (2) the cause of action must arise from that tortious act, and (3) the act must have caused injury to a person or property within New York." Doe v. Delaware State Police, 939 F. Supp.2d 313, 325-26 (S.D.N.Y. 2013) (citing LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214 (2000)). Under CPLR 302(a)(3)(i), "a plaintiff must further demonstrate one of four forms of ongoing New York activity by the defendant: regularly doing business in New York, regularly soliciting business in New York, engaging in a persistent course of conduct in New York, or deriving substantial revenue from goods used or consumed or services rendered in New York." Levans v. Delta Airlines, Inc., 988 F. Supp.2d 330, 338 (E.D.N.Y. 2013); see also Ingraham v. Carroll, 90 N.Y.2d 592, 597 (1997). Regardless of whether it is the business, conduct, or revenue component of CPLR 302(a)(3)(i) upon which the plaintiff relies, they all "necessitate[] some ongoing activity within New York State." Ingraham, 90 N.Y.2d at 597 (1997). That said, "clause (i) [of CPLR

302(a)(3)] does not require the quantity of New York contacts that is necessary to obtain general jurisdiction under the 'doing business' test of CPLR 301." Ingraham, 90 N.Y.2d at 597. In addition, unlike CPLR 302(a)(1), CPLR 302(a)(3) does not require that a cause of action arise from a defendant's out-of-state activity. Hearst Corp. v. Goldberger, No. 96 CIV. 3620 PKL AJP, 1997 WL 97097, at *14 (S.D.N.Y. Feb. 26, 1997) (citing 1 Weinstein, Korn & Miller, NEW YORK CIVIL PRACTICE: CPLR § 302.14 at 3-156 to 3-157 (1996) (footnotes omitted in original); other citation omitted).

### 1. IAI Is Not Subject to Jurisdiction Under CPLR 302(a)(3)(i)

Global has sufficiently alleged the elements of an out-of-state tort (i.e., IC's allegedly defective manufacture of the Machine) causing an in-state injury (i.e., Plaintiff's accident while operating the Machine in New York). The Court next must examine whether Global has demonstrated the requisite ongoing New York activity by IAI.

Global does not specify which of the four forms of ongoing New York activity by IAI are relevant here, but it appears to be relying on the same evidence offered in support of its argument under CPLR 302(a)(1), namely, (1) IAI's parts sales to H.P. Neun through 2016, which generated approximately $60,000 in revenue, and (2) IAI's 2015 service-call on the Machine. (See Global Mem. (ECF #130-10) at 13). Thus, the Court interprets Global's pleadings as alleging that IAI "does or solicits business" or "derives

substantial revenue from goods used . . . or services rendered, in the state." N.Y. CIV. PRAC. L. & R. 302(a)(3)(i).

"[T]o establish that a defendant 'does or solicits business' in New York, it must be shown that [its] 'overall contact with New York is substantial enough to make it reasonable to subject [it] to jurisdiction and feasible for [it] to defend here.'" Murdock v. Arenson Int'l USA, Inc., 554 N.Y.S.2d 887, 888 (1st Dep't 1990) (quoting Siegel, New York Practice, § 88, p. 103 (6th ed.)). Almost 50 years ago, the district court in Chunky Corp. v. Blumenthal Bros. Chocolate Co., 299 F. Supp. 110 (S.D.N.Y. 1969), noted that there is an absence of "clear authoritative guidance" on this question from the New York courts. Id. at 115. The drafters of CPLR 302(a)(3)(i) provided only "some general guidance, commenting that the amount of business that must be done to satisfy the statute sits somewhere between the substantial contacts required of general jurisdiction under Section 301 and the 'one shot' business transaction required in [CPLR] Section 302(a)(1)." Del Ponte v. Universal City Dev. Partners, Ltd., No. 07-CV-2360 KMK LMS, 2008 WL 169358, at *4 (S.D.N.Y. Jan. 16, 2008) (quoting Vincent C. Alexander, Practice Commentaries, CPLR § C302:12, 7B McKinney's Consol. Laws of N.Y. 158, 159 (2001)). As recently as earlier this year, the Fourth Department of New York State Supreme Court's Appellate Division observed that "[a] uniformly dependable yardstick for what is or is not 'substantial' has not yet been

devised. . . ." <u>Williams v. Beemiller, Inc.</u>, 159 A.D.3d 148, 153, 72 N.Y.S.3d 276 (4th Dep't 2018) (quoting Siegel, N.Y. Prac. § 88 at 165 (5th ed. 2011)). "[C]ourts have applied both a proportion test and a quantity test to determine what constitutes substantial revenue within the meaning of CPLR 302(a)(3)[.]" <u>Id.</u> (citing Siegel, N.Y. Prac § 88 at 165 (5th ed. 2011); other citations omitted). Under the proportion test, "the defendant's overall revenue is compared to revenue from New York or interstate/international commerce[,]" <u>Williams</u>, 159 A.D.3d at 154 (citations omitted), while under the quantity test, "revenue may be deemed 'substantial' where the amount of revenue the defendant derives from New York or interstate/international commerce is great, even though it comprises only a small proportion of the defendant's overall business[.]" <u>Id.</u> (citations omitted).

With regard to its New York-derived revenue, IAI has proffered evidence that in the years prior to the accident in 2012, IAI made only 17 shipments of parts to H.P. Neun, with a total invoiced value of $7,915.82. From January 1, 2012, to the time of Plaintiff's accident on September, 30, 2012, IAI made three parts shipments to New York (all to H.P. Neun), with a total invoiced value of $1,771.71. (<u>See</u> Miller Reply (ECF #89-1), ¶ 4). In IAI's fiscal year running from October 1, 2011, to September 30, 2012, IAI's New York revenue was $1,848, or 0.03 percent of its total revenue. In IAI's fiscal year October 1, 2015, through July 31,

2016, the year Global commenced the third-party action, IAI's New York revenue was $5,085, or 0.12 percent of total revenue. (See Miller Decl. (ECF #80-6), ¶ 12). IAI did not enter New York to service the Machine until 2015, about three years after the accident. (Id. at ¶ 5). IAI's New York revenue has never been higher than 0.49 percent of its total revenue in the years. (Id.). As IAI notes, Global does not dispute these figures.[5]

In Chunky Corp., 299 F. Supp. at 115, the district court found that "a firm with no permanent employees in New York and no other establishment in the state . . . by virtue of the fact that about 4% of its revenue is derived from New York sources" "cannot be said to do or solicit business on a regular basis, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed in New York." Id. Here, the percentage of IAI's revenue that is comprised of New York sales—.49 percent—is significantly less than the 4 percent found insufficient in Chunky

---

[5]
    The Court finds that IAI has misrepresented the holding of Vecchio v. S & T Mfg. Co., 601 F. Supp. 55, 58 (E.D.N.Y. 1984), cited in support of its argument regarding CPLR 302(a)(3). (See IAI's Mem. (ECF #121-1) at 15 (stating that in Vecchio " the court held that $7,400 in New York revenue, which represented only 1.304% of defendant's total revenue, was insufficient for purposes of CPLR 302(a)(3)(i)"). First of all, subsection (ii) of CPLR 302(a)(3) was at issue in Vecchio; not subsection (i). See Vecchio, 601 F. Supp. at 56–57 ("In order for the Court to exercise its jurisdiction over S & T, it must determine whether New York's CPLR section 302(a)(3)(ii) can be properly applied . . . ."). Second, the district court actually held that the "$7,400 figure alone [was] not so large that it would constitute prima facie evidence to satisfy the substantial revenue requirement," and in the absence of any indication of "the amount of defendant's total revenue derived from interstate and international business, that is, the revenue derived beyond those from the two New York workstands, the [c]ourt does not believe it may properly rule on the motion at this time without further evidence." Id. at 58.

<u>Corp.</u>, 299 F. Supp. at 115. And, similarly to that case, any other indicia of ongoing New York activity by IAI is lacking. After scrutinizing the record and case law, the Court agrees with IAI that more contact with New York than has been shown here is necessary to meet the requirements of CPLR 302(a)(3)(i).[6]

### 2. IC Cannot Be Subject to Jurisdiction Under CPLR 302(a)(3)(i)

Subjecting IC to jurisdiction under CPLR 302(a)(3)(i) is only possible if IAI also is subject to jurisdiction under that section, because IC has not independently engaged in any of the four possible forms of ongoing New York activity required under subsection (i). As discussed above, the Court has found that IAI does not have the quantity and quality of business contacts with New York sufficient to allow exercise of personal jurisdiction under CPLR 302(a)(3)(i). Therefore, the Court cannot exercise personal jurisdiction over IC.

### F. Due Process

---

[6]

    <u>Contrast</u> <u>with</u> <u>Del Ponte</u>, 2008 WL 169358, at *5 ("[J]urisdictional discovery has demonstrated that Ray-Art has purchased nearly a third of its inventory over a five-year period from New York vendors. This volume of business, expressed as percentage of overall expenditures, equals or surpasses that demonstrated in many other cases where New York courts upheld long-arm jurisdiction under [CPLR] Section 302(a)(3)(i).") (citing <u>Tonns</u>, 455 N.Y.S.2d at 126-27 (upholding jurisdiction with New York business sales of 4 to 7.1 percent); <u>Allen v. Canadian Gen. Elec. Co.</u>, 410 N.Y.S.2d 707, 708-09 (3d Dep't 1978) (upholding jurisdiction with New York business sales of 1 percent of total sales of $8.79 million); <u>Reynolds v. Aircraft Leasing, Inc.</u>, 756 N.Y.S.2d 704, 709 (Sup. Ct. 2002) (upholding jurisdiction with New York business sales of 8.5 percent of total income)).

Having found that the exercise of personal jurisdiction under New York's long-arm statute is not proper over IAI and IC, the Court need not conduct a due process analysis. See, e.g., Rescuecom Corp. v. Hyams, 477 F. Supp.2d 522, 532 (N.D.N.Y. 2006) (where plaintiff had demonstrated no grounds for the assertion of long-arm jurisdiction under CPLR 302(a), "[t]here [was] no need to consider whether assertion of long-arm jurisdiction would comport with due process") (citation omitted).

## IV. The Motions to Dismiss for Failure to State a Claim

IAI's and IC's motions to dismiss for failure to state a claim are moot in light of the Court's granting of their motions to dismiss for lack of jurisdiction.

## V. The Cross-Motion to Amend the Third-Party Complaint

Given that the Court has found that it cannot exercise personal jurisdiction over third-party defendants IAI and IC, the Court must deny Global's cross-motion to amend the third-party complaint as futile.

## VI. Conclusion

For the reasons discussed above, the Court grants IAI's (ECF #121) and IC's (ECF #122) motions to dismiss for lack of jurisdiction; denies as moot IAI's (ECF #121) and IC's (ECF #122) motions to dismiss for failure to state a claim; and denies as futile Global's cross-motion (ECF #83) to amend/correct the third-party complaint. Global's claims in the proposed amended third-

amended complaint (ECF #83-2) as to IAI and IC are dismissed, and the Clerk of Court is directed to terminate IAI and IC as parties in this action.

Remaining pending in this case are (1) Plaintiff's original complaint (ECF #1) against Global; and (2) Global's original third-party complaint (ECF #32) against H.P. Neun. IAI and IC are dismissed as parties, and Arvco was previously dismissed as a party in 2016.

**SO ORDERED.**

**s/ Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    July 23, 2018
          Rochester, New York